**STATE OF INDIANA, DEPARTMENT OF PUBLIC WELFARE, Plaintiff,**

**v.**

**Otis R. BOWEN, M.D., Secretary of the Department of Health and Human Services; Barbara J. Gagel, Acting Regional Administrator, Health Care Financing Administration; James L. Scott, Associate Administrator for Operations, Health Care Financing Administration; Judith A. Ballard; Donald F. Garrett, and Cecilia Sparks Ford, members of the Departmental Grant Appeals Board, Defendants.**

No. IP 84–363–C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Nov. 13, 1987.

Linley E. Pearson, Atty. Gen., Patricia K. Slater, Deputy Atty. Gen., Indianapolis, Ind., for plaintiff.

Deborah J. Daniels, U.S. Atty., Bradley L. Williams and Carolyn N. Small, Asst. U.S. Attys., Indianapolis, Ind., for defendants.

## ENTRY

NOLAND, District Judge.

This matter is before the Court for judicial review on the plaintiff's motion to reverse the decision of the Departmental Grant Appeals Board of the Department of Health and Human Services and the defendant Secretary's motion for judgment on the pleadings. The matter is fully briefed and ready for disposition.

The Court, having reviewed the pleadings, motions and briefs, now affirms the decision of the Secretary of Health and Human Services, and the Departmental Grant Appeals Board.

Accordingly, the motion to reverse is DENIED and the motion for judgment on the pleadings is GRANTED. Costs v. plaintiff.

## MEMORANDUM

This is an action by the State of Indiana, Department of Public Welfare, for judicial review of a January 13, 1984 final administrative decision of the Secretary of Health and Human Services by the Departmental Grant Appeals Board of the Department of Health and Human Services. The Secretary's decision, *In the Matter of Indiana Department of Public Welfare*, Docket No. 83–83, Decision No. 489 (Dec. 30, 1983), sustained a disallowance of One Hundred Twelve Thousand Four Hundred Forty–Six Dollars and Forty–Two Cents ($112,446.42) in Medical Assistance grant funds ("Medicaid") taken by the Department of Health and Human Services' Health Care Financing Administration ("HCFA") pursuant to section 1903(g) of Title XIX of the Social Security Act, 42 U.S.C. § 1396b(g) ("the Act"). Section 1903(g) establishes penalties in the form of a decrease in the federal medical assistance percentage for a state's failure to comply with enumerated "utilization control" requirements. In this cause, HCFA based the disallowance on Indiana's failure to meet the requirements regarding valid and timely certification and recertification of the need for inpatient skilled or intermediate nursing care and valid and timely establishment and updating of patient care plans under 42 U.S.C. § 1396b(g)(1)(A) and (B).

The Court has jurisdiction pursuant to Title 28 U.S.C. § 1331, *Illinois v. Schweiker*, 707 F.2d 273, 275–277 (7th Cir.1983). Indiana's Medicaid program must conform to the requirements, rules and regulations promulgated by the Department of Health and Human Services in order to receive federal program grant funds. 45 C.F.R. § 201.1. Once the plan is approved, the state becomes eligible for grants of federal funds in reimbursement for a portion of its expenditures made in providing specific types of medical assistance to eligible individuals. 42 U.S.C. § 1396b; 45 C.F.R. § 201.5. The Act requires that the state agency responsible for administration of the state plan make a showing "satisfactory to the Secretary ... that there is in operation in the State an effective program of control over utilization of such services" by Medicaid patients in hospitals, skilled nursing facilities ("SNF"s), or intermediate care facilities ("ICFs"). This showing must be made for each calendar quarter for which the state submits a request for payment at the full rate for amounts paid for inpatient services. 42 U.S.C. § 1396b(g)(1). With respect to any quarter for which this showing is not made, the Secretary must decrease the state's payments according to the statutory formula at 42 U.S.C. § 1396b(g)(5). *See* 42 C.F.R. § 456.1(b)(2) *et seq.* The federal share of Indiana's Medicaid program costs is fifty-seven percent (57%).

In August, 1982, the Indiana State Department of Public Welfare was notified that a utilization control validation survey would be conducted in ten of Indiana's five

hundred forty-seven skilled nursing care facilities for the quarter ending June 30, 1982. This was followed by a letter from Barbara Gagel, Acting Regional Administrator, HCFP, confirming the fact that a survey would be conducted. From September 20 through September 30, 1982, ten pre-selected Indiana nursing homes were visited by a survey team. The initial audit resulted in a citation for fifty-one (51) deficiencies in utilization control and a disallowance of One Hundred Eighty–One Thousand Two Hundred Ninety Dollars and Fifty–Two Cents ($181,290.52), reducing the next grant award issued to Indiana. Pursuant to 42 U.S.C. § 1316(d), the Indiana State Department of Public Welfare timely appealed the disallowance penalty to the Departmental Grant Appeals Board. Following the submission of the state's brief and response to the audit the HCFA filed a reply brief indicating a penalty reduction to the sum of Eighty–Seven Thousand Two Hundred Four Dollars and Sixty–Six Cents ($87,204.66). A subsequent recalculation finally settled on the current sum of One Hundred Twelve Thousand Four Hundred Forty–Six Dollars and Forty–Two Cents ($112,446.42). The Appeals Board affirmed the agency and this action followed.

The standard of review is a narrow one and the finding and decision of the board must be upheld unless the decision was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A). *Wisconsin Dept. of Health & Social Services v. Bowen,* 797 F.2d 391, 398 (7th Cir.1986); *Perales v. Heckler,* 611 F.Supp. 333, 337 (D.C.N.Y. 1984) aff'd 762 F.2d 226 (2d Cir.1985).

As Justice Powell stated in *Schweiker, Secretary of H.H.S., et al. v. Gray Panthers,* 453 U.S. 34, 43, 101 S.Ct. 2633, 2640, 69 L.Ed.2d 460 (1981);

The Social Security Act is among the most intricate ever drafted by Congress. Its Byzantine construction, as Judge Friendly has observed, makes the Act almost unintelligible to the uninitiated (citation omitted) ... Perhaps appreciating the complexity of what it had wrought, Congress conferred on the Secretary exceptionally broad authority to prescribe standards for applying certain sections of the act.

The Court found that the Secretary's definition of the terms contained in the statute are entitled to more than mere deference or weight, but are entitled to "legislative effect." *Schweiker,* 453 U.S. at 44, 101 S.Ct. at 2640.

A reviewing Court must consider whether the decision was based on a consideration of all of the relative factors and whether there has been a clear error of judgment. "The Court is not empowered to substitute its judgment for that of the Agency." So long as the Secretary's interpretation of the Social Security Act and implementing regulations—in this case those relating to utilization control—is rational, the court may not disturb it, even if the court prefers an alternative interpretation. *Bowman Transportation v. Arkansas–Best Freight Systems,* 419 U.S. 281, 285, 95 S.Ct. 438, 441–42, 42 L.Ed.2d 447 (1974) citing *Citizens v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971).

This narrow standard of review applies as well to the Court's factual inquiry. This Court must confine its factual inquiry to the administrative record, because judicial review of a final agency decision is not a *de novo* proceeding. *Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973); *United States v. Carlo Bianchi and Co.,* 373 U.S. 709, 715, 83 S.Ct. 1409, 1413–14, 10 L.Ed.2d 652 (1963). As the court stated in *Camp,* "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court."

We, therefore, conclude that the sole issue before the Court is to determine if the Secretary's decision is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law based upon the administrative record before the Court.

■ The State asserts that the decision was not based on a consideration of the relevant factors and that the Board refused to carefully consider disputed facts. Plain-

tiff's motion at 7. The State further asserts that the literal interpretation of the statute is arbitrary and capricious and exceeds the Secretary's authority. The plaintiff then asserts that the Secretary's rigid interpretation of 42 U.S.C. § 1396b(g) and its concomitant regulation 42 C.F.R. § 456.650 *et seq.* results in disallowance penalties where a satisfactory and effective state program is in effect as shown by the fact that the auditors, defective as their work allegedly was, found only six legitimate unexplainable errors in their survey.

Conversely, the Secretary claims that plaintiff admits that there were errors in two of the six facilities and that the Board found that the evidence supported the finding of errors in the other four institutions. Defendant's brief at 14. The record supports the Board's findings of errors in the six institutions.

The plaintiff further asserts that the Secretary requires the State's system to be perfect in order to meet the statutory standard of a "satisfactory showing of an effective program of utilization control." That such a rigid interpretation defeats the purposes of the statute and is unrelated to patient needs or care cost control.

The Secretary responds by asserting that in order to show an "effective program of utilization control" a state must provide evidence that

(A) *in each case* for which payment is made under the State plan, a physician certifies at the time of admission ... and recertifies ... that such services are or were required to be given on an inpatient basis because the individual needs ... such services; and

(B) *in each such case,* such services were furnished under a plan established and periodically reviewed and evaluated by a physician;

   \*    \*    \*    \*    \*    \*

42 U.S.C. § 1396b(g)(1)(A) and (B).

Further that plain meaning of the underlined language precludes any speculation about what Congress intended by the words "satisfactory showing" of an "effective program of utilization control." The Secretary asserts that Congress was directing the Secretary to reduce a state's grant any time there was even a single violation, of the utilization control requirements in a facility.

In *Colorado Dept. of Social Services v. The Dept. of Health and Human Services,* 558 F.Supp. 337 (D.Colo.1983), the court reached exactly this result. *Colorado v. Health and Human Services,* involved a section 1903(g) utilization control validation survey. The federal surveyors found a single violation of the physician certification requirements in one nursing home, and HCFA's disallowance of Twenty–One Thousand Three Hundred Seventy–Seven Dollars ($21,377.00) was sustained against a challenge of arbitrary and capricious action.

The Court stated:

> The Court agrees with Colorado that this was a harsh penalty for so minor a deviation from the utilization control requirements. However, Colorado ignores the mandatory language in which § 1396(g) is framed, and the absence in the statute of an exception for this type of minor compliance failure. 558 F.Supp. at 354.

The Court further points out that the statute states that the grants "shall be decreased" if the state fails to meet the "each case" standard. The Court concluded that the Secretary has no discretion to waive noncompliance penalties without an express statutory provision. *Colorado Dept. of Human Services v. Dept. of Health and Human Services,* 558 F.Supp. at 355.

We believe that the decision correctly states the applicable law. The decision of the Secretary is not arbitrary, capricious or contrary to law. *See State of Wisc. Dept. of Health v. Bowen,* 797 F.2d at 399.

■ The Court finds no merit to the plaintiff's allegations of procedural irregularities regarding notice, surveyor training and lack of exit interviews. The Agency surveyors may well have been poorly trained and performed inadequately. However, there is no prejudice apparent to the

Court as the Secretary has reduced the penalty where the State was able to show actual compliance with the statute. The internal operation of the survey staff is a matter for the Secretary, not the Department of Public Welfare, to critique. *United States v. Caceres*, 440 U.S. 741, 753, 99 S.Ct. 1465, 1472, 59 L.Ed.2d 733 (1979).

Lastly, the plaintiff alleges that the Appeals Board was biased in favor of the Agency since it was created by the Agency and because the board ruled, as did this Court, that plaintiff's discovery requests should be denied and that an evidentiary hearing was not required. These assertions are too general to deserve anything more than cursory comment. Perhaps there is a better way to handle these matters but Congress has created a system of grants supported by a procedure for certification and review of the program. Where as here, certain deficiences are noted and grant disallowance occurs, a system of administrative appeals provides an acceptable method of review to iron out intergovernmental disputes short of lengthy legal actions. In light of the administrative record before the Court, the acts and decision of the Secretary are not arbitrary, capricious or contrary to law and is hereby affirmed in all respects.