**TEXAS DEPARTMENT OF HUMAN SERVICES, et al., Appellants,**

v.

**CHRISTIAN CARE CENTERS, INC., Appellee.**

No. 3–91–024–CV.

Court of Appeals of Texas, Austin.

March 4, 1992.

Rehearing Overruled April 15, 1992.

---

**716**

Dan Morales, Atty. Gen., Frank J. Knapp, Jr., Asst. Atty. Gen., Austin, for appellants.

Phyllis B. Schunck, Clark, Thomas, Winters & Newton, Austin, for appellee.

Before CARROLL, C.J., and ABOUSSIE and KIDD, JJ.

KIDD, Justice.

Plaintiff below, Christian Care Centers, Inc. ("Christian Care"), brought a declaratory judgment action against Texas Department of Human Services (TDHS) and Ron Lindsay, Commissioner, (collectively "Appellants"). Christian Care sought to declare a portion of a TDHS administrative rule void in order to recover $124,033.85 in reimbursement payments for services it had provided to Medicaid recipients. The district court granted Christian Care's motion for summary judgment declaring that TDHS had exceeded its statutory authority in enacting the rule which allowed it to withhold the Medicaid payments in question. On appeal, Appellants contend that the trial court erred in granting summary

judgment. We will affirm the district court.

## THE CONTROVERSY

### The Medicaid Program

The Texas Legislature has designated TDHS to administer the Texas program of medical assistance to financially needy persons. Tex.Hum.Res.Code Ann. § 32.021 (1990). That program, commonly known as "Medicaid,"[1] requires cooperation between TDHS and the federal government to ensure that Texas qualifies for federal matching funds. Title 42 of the United States Code establishes the program whereby matching funds are provided to states as a percentage of state expenditures for health care to the needy. 42 U.S.C. §§ 1396–1396s (1988 & Supp. I.1989). The Secretary of the United States Department of Health and Human Services administers this program through rules codified in title 42 of the Code of Federal Regulations. 42 C.F.R. §§ 430–456 (1991). Those federal rules set requirements for matching funds but do not attempt to assign functions directly to any particular state administrative agency. That process is left to state lawmakers.

The Texas Legislature gave TDHS statutory authority to provide Medicaid services directly or through contracts with private providers. TDHS also has authority to prescribe rules governing the Medicaid program, including "reasonable rules and standards governing the determination of fees, charges, and rates for medical assistance payments." Tex.Hum.Res.Code Ann. §§ 22.002, 32.001–32.040, 32.028 (1990 & Supp.1992) (the state Medical Assistance statute). Under this authority, TDHS has adopted extensive rules governing its Medicaid program which are codified at title 40 of the Texas Administrative Code.

TDHS also issues policy statements which are viewed as rules under the Administrative Procedure and Texas Register Act (APTRA). See Tex.Rev.Civ.Stat.Ann. art. 6252–13a (Supp.1992). One type of policy statement, entitled Standards for Participation, is used to amend provider contracts. Standards for Participation mirror formal rules and carry the same numerical designation.

Under its statutory authority, TDHS promulgates standardized contracts which all providers of Medicaid services are required to sign. These contracts require nursing homes to accept and acknowledge all changes in the Standards for Participation as amendments to their contracts in order to remain providers. One such Standard and the rule it reflects, TDHS Rule 16.7103, form the focus of this lawsuit.

### The Challenged Rule

Rule 16.7103 establishes a program of "Utilization Review" to ensure that the State of Texas is paying only for nursing home services that Medicaid recipients truly need.[2] Federal Medicaid guidelines require some type of Utilization Review program to maintain eligibility for matching funds. 42 U.S.C. § 1396a(a)(30) (1988 & Supp. I.1989). States have the option of either crafting a review program similar to Medicare's review program, or creating their own program, which must be more stringent than the Federal requirements, and applying for a "superior waiver." 42 C.F.R. §§ 456.505–.507 (1991). Texas chose to craft its own program and, in 1977, received its "superior waiver" for the program which is now set out in Rule 16.7103.

Part of this review program is "continued stay review," a mechanism whereby the medical condition of a Medicaid recipi-

---

1. This is a separate and distinct program from Medicare and it is necessary to distinguish between the rules for the separate programs.

2. Tex.Dep't of Hum.Servs., 7 Tex.Reg. 2278 (1982) (40 Tex.Admin.Code § 16.7103), *amended by* 8 Tex.Reg. 3418 (1983), *amended by* 9 Tex.Reg.1985 (1984) (adopting 8 Tex.Reg. 4479 (1983) (proposed rule)), *amended by* 10 Tex.Reg. 339 (1985) (adopting 9 Tex.Reg. 5376 (1984) (proposed rule)), *amended by* 11 Tex.Reg. 2104 (1986), *amended by* 11 Tex.Reg. 4853 (1986), *amended by* 12 Tex.Reg. 4010 (1987), *amended by* 13 Tex.Reg. 3586 (1988) (adopting 13 Tex. Reg. 771 (proposed rule)), *repealed by* 15 Tex. Reg. 6749 (1990).

ent in a nursing home is regularly evaluated to determine if the "level of care"[3] administered by the nursing home continues to be appropriate to the Medicaid recipient's needs. As stated in Rule 16.-7103(d)(3), "continued stay reviews are the responsibility of the long-term care unit," a unit of the Texas Department of Health. Tex. Dep't of Hum. Servs., 12 Tex.Reg. 4010 (1987) (40 Tex.Admin.Code § 16.-7103(d)(3), since repealed). TDHS has an agreement with the Department of Health whereby health nurses and other health-care professionals perform review and inspection of nursing homes under the Medicaid program. Tex. Dep't of Hum. Servs. 7 Tex.Reg. 2278 (1982) (40 Tex.Admin.Code § 16.7101, since repealed).

However, in rule changes made since the original waiver was obtained, TDHS and the Department of Health have shifted at least part of their responsibility to nursing homes. A 1987 amendment to Rule 16.-7103 requires that nursing home facilities submit level of care assessment forms to the Health Department at specified intervals. Tex. Dep't of Hum. Servs., 12 Tex. Reg. 4010 (1987) (40 Tex.Admin.Code § 16.-7103(d)(3) and (4)(A), since repealed). This rule change was also issued as a Standard for Participation. Pursuant to the contracts, providers had to accept this Standard as an amendment to their contracts in order to continue participating in the program. It is the enforcement of this change to Rule 16.7103 in the Utilization Review process that creates the controversy in this case.

The system promulgated by TDHS provides that if the nursing home fails to submit its forms in a timely fashion, the Department of Health does not initiate its review. Absent a review, the patient's "level of care" pursuant to the Rule "cease[s] to exist" and TDHS does not pay for the care provided during the period of time that the "level of care" assessment forms are not on file.[4] The designation that a patient's "level of care" has "ceased to exist" avoids the due-process notice procedures otherwise required when finding a patient is no longer medically eligible for benefits.

*Christian Care Centers, Inc.*

Christian Care entered into two standard contracts with TDHS: a 1980 contract for an intermediate care facility and a 1973 contract for a skilled nursing facility. Due to administrative confusion at the nursing home, lasting several months during 1988 and 1989, Christian Care's employees failed to send in "level of care" assessment forms for thirty-seven Medicaid recipients. The nursing home did not realize the error until payments from the State ceased several

---

**3.** Level of Care (LOC) is defined as the required degree of medical care or nursing care for a recipient in a nursing home. Tex.Dep't of Hum. Servs., 13 Tex.Reg. 3587 (1988), *adopting* 13 Tex.Reg. 766 (1988) (proposed rule) (40 Tex.Admin.Code § 16.1101, since repealed).

**4.** The portions of the Rule 16.7103 relevant to this case are:

(4)(E) if an LOC [Level Of Care] form is not received by the day after the expiration date of the current LOC, the current LOC ceases to exist. To reinstate an expired LOC, facility staff must submit an updated LOC assessment to the TDH/LTCU. The date of receipt of these LOC forms is the new effective date of the LOC;

\* \* \* \* \* \*

(4)(G) DHS does not pay for the period of time between the LOC expiration date and the new effective date of the level of care, and recoups any inadvertent payments made to ICF or SNF facilities. If a lapse in payment is because of a facility error, restrictions apply as provided in § 16.3807 of this title (relating to Limitations on Provider Charges to Patients).

Tex.Dep't of Hum.Servs., 13 Tex.Reg. 3588 (1988), adopting 13 Tex.Reg. 772 (1988) (proposed rule) (40 Tex.Admin.Code § 16.-7103(d)(4)(E), (G), since repealed) and

(8) The Texas Department of Human Services (DHS) does not make vendor payment when a level of care expires. A provider is not entitled to payment for services between the expiration date and the new effective date of a recipient's level of care. Vendor payment made by DHS for that period is subject to recoupment.

Tex.Dep't of Hum.Servs., 12 Tex.Reg. 4010 (1987) (40 Tex.Admin.Code § 16.7103(d)(8), since repealed). This Court notes that the penalty provisions of this Rule have been amended during the pendency of this suit so that they are no longer permanent. However, these changes do not impact our decision.

months later.[5] When Christian Care became aware of the problem, it sent in new forms and Medicaid payments resumed from the date those forms were processed. However, pursuant to the Rule in question, TDHS refused to pay for the care provided during the interim period when the forms were not current. There is no dispute on this appeal that the thirty-seven Medicaid recipients at the Christian Care facility received reasonable and necessary nursing care at all times. Nor is there any question as to the eligibility of these patients for Medicaid, based on financial or medical need. However, TDHS takes the position that under its Rule, which states that without current forms the "level of care ceases to exist," Christian Care has permanently lost the Medicaid payments for these patients during the hiatus.[6]

In the district court, Christian Care filed a motion for summary judgment alleging that the enforcement of Rule 16.7103 by permanently withholding Medicaid reimbursement payments for services provided to admittedly eligible Medicaid recipients exceeded the statutory authority granted to TDHS. Appellants responded that the promulgation and enforcement of the Rule was within its statutory authority. Further, they alleged that the Rule was incorporated into the written contracts existing between TDHS and Christian Care and, therefore, should be enforced by the court as written. The district court held that TDHS exceeded its statutory authority in enacting this penalty provision of Rule 16.7103 and applying it to effectuate the forfeiture of Medicaid payments due Christian Care. On appeal, Appellants contend, in a single point of error, that the district court erred in granting Christian Care's Motion for Summary Judgment.

### DISCUSSION AND HOLDING

■■■■ An agency like TDHS "is a creature of the Legislature and has only such powers as are expressly granted to it by statute, together with those necessarily implied from the authority conferred or duties imposed." *Railroad Comm'n v. Atchison, T. & S.F. R.R.*, 609 S.W.2d 641, 643 (Tex. Civ.App.1980, writ ref'd n.r.e.). TDHS is expressly granted authority to withhold Medicaid payments permanently *only* in cases of contract cancellation or fraud. *See* Tex.Hum.Res.Code Ann. §§ 32.034, 32.039 (1990). Christian Care argues that since TDHS has not been given the express authority to enforce Rule 16.7103 by permanently withholding payments, the agency's action is unlawful. Christian Care urges this Court to adopt a system whereby TDHS could enforce the Rule in question only by canceling the contract with the nursing home provider. However, it is obvious from the statutory language that sections 32.034 and 32.039, dealing with contract cancellation and fraud, are not intended as the exclusive enforcement tools for the Medicaid program, and we decline to read the statutory authority of TDHS so narrowly.

■■■■ Lack of express authority for a particular act of an agency does not mean the agency has no authority for that act. An agency may have implied authority to take an action or promulgate a rule even though such authority might not be expressly enumerated in its enabling statute. Indeed, under a general grant of authority, an agency has all the implied authority *reasonably* necessary to accomplish a delegated purpose. *Sexton v. Mount Olivet Cemetery Ass'n*, 720 S.W.2d 129, 137 (Tex. App.1986, writ ref'd n.r.e.) (and cases cited therein). The legislature expressly gave

---

5. A time lag occurs between the date services are rendered and the date payment is sent to providers. Therefore, it takes several months for nursing homes to realize that they are no longer receiving payments due to their failure to update level of care forms. No other notice exists for the failure to timely update these forms.

6. This refusal to pay is especially harsh because the nursing home has no other source of reimbursement. Providers are forbidden by federal and state law from charging the patients directly because the patients to whom services were rendered were at all times Medicaid eligible. Tex.Dep't of Hum.Servs., 12 Tex.Reg. 70 (1987) *adopting,* 11 Tex.Reg. 3925 (1986) (proposed rule) (40 Tex.Admin.Code § 16.3807, since repealed).

TDHS full rulemaking authority as necessary for the administration of the Medicaid program. Tex.Hum.Rex.Code Ann. § 32.-021 (1990).[7] A means of enforcing the administrative rules can be implied from the grant to promulgate rules. *Sexton,* 720 S.W.2d at 137; *see also First Fed. Sav. & Loan Ass'n v. Vandygriff,* 639 S.W.2d 492, 499 (Tex.App.1982, writ dism'd). In the instant case, we conclude that the authority given TDHS to promulgate rules for utilization review includes the implied authority to enforce such rules.

■ However, statutory authority, both express and implied, is limited to what is necessary and reasonable. *See Bullock v. Hewlett–Packard Co.,* 628 S.W.2d 754, 756 (Tex.1982). Although we hold that implied authority would permit TDHS to *temporarily* withhold Medicaid payments until a nursing home facility complied with the rules, we conclude that such authority does not extend to the *permanent* withholding of payments for services that were actually rendered to qualified Medicaid patients. Although administrative rules are. presumed valid, they may be found void if adopted without statutory authority. *Hollywood Calling v. Public Util. Comm'n,* 805 S.W.2d 618, 620 (Tex.App.1991, no writ); *see also Brown v. Humble Oil & Ref. Co.,* 87 S.W.2d 1069 (Tex.1935). There appears to be no reasonable basis to support the confiscation or forfeiture that results from the Rule at issue in this case, either to enforce other TDHS rules or carry out the purposes of the program.

■ Appellants argue that permanently withholding payments for services rendered while current "level of care" forms were not on file is necessary to prevent the loss of federal matching funds. A careful reading of the federal statutes governing Medicaid does not support this contention. At the time TDHS promulgated these penalty provisions, the only element of Utilization Review which elicited a mandatory decrease of federal funds was failure to have an annual evaluation of each case by a professional review team. 42 U.S.C. § 1396b(g)(1) (1988).[8] As Christian Care correctly points out, the cases TDHS cites in their supplemental brief are narrowly based on language which was subsequently deleted from the statute. *See Indiana Dep't of Public Welfare v. Bowen,* 686 F.Supp. 692, 695 (S.D.Ind.1987); *Colorado Dep't of Social Servs. v. Department of Health and Human Servs.,* 558 F.Supp. 337, 354 (D.Colo.1983) (amounts of federal matching funds reduced due to the failure of states to meet the statutory requirements of their Utilization Review programs). The courts in those cases lamented the overly harsh penalty provision but felt constrained to follow it until Congress acted to amend it. *Bowen,* 686 F.Supp. at 695. In view of the change in the Medicaid statute, this Court finds no federal basis for the permanent withholding provision.[9]

---

**7.** TDHS also cites to Tex.Hum.Res.Code Ann. §§ 32.024(c) and 32.026(a), (c) (1990), as authority to promulgate Rule 16.7103. However, those sections deal with the relationship between the agency and aid recipients, not providers. Further, once a patient is qualified and begins receiving aid under the program, the agency's authority to terminate services to patients is circumscribed by the United States Constitution. *See Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

**8.** This version of the statute includes the amendments made in 1984 decreasing the scope of the mandatory penalty provisions. Spending Reduction Act of 1984, Pub.L. No. 98–369, § 2363(a)(2)(C), (a)(4), 98 Stat. 494, 1106 (1984).

**9.** Section 1396b(g)(1) also makes reference to a medical review program as set out in 42 U.S.C. § 1396a(a)(26) through (31) (1988 & Supp. I. 1989). These subsections in turn refer states to requirements in 42 U.S.C. §§ 1396r(b)–(d), (f)(7), (e), (g), and (h)(2)(B) and (D) (1988 & Supp. I. 1989) and Social Security Amendments of 1967, Pub.L. 90–248, § 236(b), 81 Stat. 821, 908, *amended by* Social Security Amendments of 1972, Pub.L. 92–603, §§ 268(b), 269, 274(b), 86 Stat. 1329, 1451–52, *amended by* Act approved Dec. 31, 1973, Pub.L. 93–233, § 18(y)(3), 87 Stat. 947, 973 (42 U.S.C. § 1396g, since repealed). None of these sections places upon states or facilities a requirement similar to the Level of Care Forms, or requires a decrease in federal matching funds as a mandatory penalty if such forms or the review initiated by them is delayed, or if services provided during that delay are reimbursed once the need for those services has finally been documented.

■ Further, TDHS has constructed the enforcement of Rule 16.7103 around the fiction that the patient's "level of care," i.e., the patient's medical need, "ceases to exist." Relying on this fiction to deny reimbursement likewise exceeds the statutory authority of TDHS. TDHS is required to pay for qualified services made to eligible patients or give notice before finding patients ineligible, so that disqualified patients may exercise their due-process right to appeal eligibility decisions. *See* Tex. Hum.Res.Code Ann. § 32.035 (1990); 42 U.S.C. § 1396a(a)(3) and (10) (1988 & Supp. I.1989); 42 C.F.R. § 431.200–.250 (1991); *see also Goldberg,* 397 U.S. 254, 90 S.Ct. 1011. By providing that a "Level of Care ceases to exist," rather than declaring a patient medically ineligible, TDHS seeks to avoid these due-process notice and appeal requirements. We find that use of· this grammatical fiction circumvents the primary intent of the Medicaid statute; to provide continuous payment for necessary services to eligible individuals. Implied authority is not authority to depart from the intent of the statute. *Sexton,* 720 S.W.2d at 137; *see also Texas Bd. of Dental Examiners v. Prichard,* 446 S.W.2d 905, 909 (Tex.Civ.App.1969, writ ref'd n.r.e.).

■ One of the key determinants of whether a rule is within an agency's implied authority is whether the rule harmonizes with the purpose of the agency's governing statute, in all of its provisions. *See Gerst v. Oak Cliff Sav. & Loan Ass'n,* 432 S.W.2d 702, 706 (Tex.1968); *see also State Bd. of Ins. v. Deffebach,* 631 S.W.2d 794, 798 (Tex.App.1982, writ ref'd n.r.e.); *Jefco, Inc. v. Lewis,* 520 S.W.2d 915, 921 (Tex.Civ. App.1975, writ ref'd n.r.e.). It would be inconsistent with the overall purposes of the Medical Assistance statute, i.e. providing quality nursing services to Medicaid qualified patients, to give TDHS the authority to withhold funds permanently, merely for failure to file updated records timely.

TDHS alternatively urges that summary judgment was inappropriate in this case because of genuine and material fact issues regarding the enforcement of the written contracts between TDHS and Christian Care. A trial court should grant a motion for summary judgment only if the movant establishes by competent summary judgment evidence that there is no genuine issue of material fact to be decided and that the movant is therefore entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548 (Tex.1985). Movant has the burden of demonstrating that no genuine issue of material fact exists. *Id.*

■ We believe the district court correctly concluded that if Rule 16.-7103(d)(4)(G) and (8), as enforced to permanently withhold funds from Christian Care, is invalid, then the incorporation of the Rule into the written contracts is likewise unenforceable. The invalidity of the Rule is a question of law for the court, therefore, it creates no genuine and material fact issue to be presented to a factfinder. *See Texas State Bd. of Examiners in Optometry v. Carp,* 388 S.W.2d 409, 414–15 (Tex.1965). In this case, once the Rule is declared void, the issue of the contract is resolved as a matter of law and there is no ambiguity to present to a fact finder. *See Capitol Rod & Gun Club v. Lower Colorado River Auth.,* 622 S.W.2d 887, 894 (Tex. App.1981, writ ref'd n.r.e.).

Permanent withholding of reimbursement during the lapse in filing "level of care" forms with TDHS is not reasonable in light of the circumstances present here and is inconsistent with the purposes of the federal Medicaid and state Medical Assistance statutes. Therefore, we hold that the district court properly concluded that the Rule as applied to Christian Care was invalid. We therefore overrule Appellant's single point of error and affirm the summary judgment of the district court.