TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00649-CV






6th & Neches, L.L.C., Appellant



v.



Elden Aldridge in his Official Capacity as Secretary/Clerk of the City of Austin; City of
Austin; and Cambridge Tower Condominiums Council of Owners, Appellees





FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT


NO. 98-00229, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING






 Appellant 6th and Neches, L.L.C. filed a petition for writ of mandamus seeking
to compel the City of Austin ("City") and its secretary, Elden Aldridge, to enact a zoning change. (1) 
The trial court denied appellant's request. We will affirm the trial court judgment.


THE CONTROVERSY


 Appellant owns property at 17th and Lavaca in Austin. The property is zoned for
downtown mixed use ("DMU"); thus, the maximum height of buildings on the property is limited
to one hundred and twenty feet. See Austin City Code § 13-2-630 (1999). Appellant applied for
a variance from the zoning ordinance to permit the construction of a taller building. Municipal
law requires that a majority of the City Council ("Council") approve a request for a variance at
three separate meetings. Id. §§ 2-2-3, 13-1-406(d).

 At the first two meetings, a majority of the Council approved the proposed
variance. Before the third meeting, the Council received letters protesting the variance from the
General Services Commission ("Commission") and the State Preservation Board ("Board"). (2) Both
letters stated in part that "[t]he only existing protection for Capitol views from the hills and
freeways around Austin is the City of Austin's 120 foot DMU zoning. We see no public purpose
significant enough to begin a trend towards waiving the 120 foot restriction." The Commission's
letter was signed by Carl Mullen, a deputy executive director of the Commission. The Board's
letter was signed by Governor George W. Bush, Lieutenant Governor Bob Bullock, and Speaker
of the House of Representatives Pete Laney, all members of the Board.

 The Local Government Code ("Code") requires the affirmative vote of at least
three-fourths of the members of the Council in the event a proposed change to a zoning regulation
is protested by owners of at least 20 percent of either: (1) the area of the lots or land covered by
the proposed change; or (2) the area of the lots or land immediately adjoining the area covered by
the proposed change and extending 200 feet from that area. See Tex. Loc. Gov't Code Ann.
§ 211.006(d) (West 1988). The parties stipulated that the State of Texas owns at least 20 percent
of the land immediately adjoining the area covered by the proposed change and extending 200 feet
from that area, thereby satisfying the requirements of section 211.006(d)(2) of the Code.

 On the third reading of the proposed change, the Council voted 5 to 2 in favor of
the variance. Because the final vote failed to meet the three-fourths requirement, the City did not
enact the proposed zoning change. Appellant sought a writ of mandamus to compel the City to
authorize the variance. The trial court denied appellant's request, concluding that the letters
constituted a proper protest; therefore, the vote of five Council members in favor of the change
was insufficient to approve the zoning change.


DISCUSSION AND HOLDINGS


 The single issue in this appeal is whether the letters sent to the Council by the
Commission and the Board were properly submitted and constituted a proper protest of the
proposed zoning change under the provisions of the Code. Appellant argues that the trial court
erred in denying its petition for writ of mandamus because: (1) both the Commission and the
Board acted beyond the scope of their legal authority in protesting appellant's proposed zoning
change and (2) the State employees who signed the protest letters acted without authority. The
parties stipulated that if none of the persons who signed the letters had authority to sign, the City
must authorize the proposed change.

 Agencies such as the Commission and the Board are creatures of the legislature and
have no inherent power; rather, they possess only those powers that are specifically given them
by statute. See McDaniel v. Texas Natural Resource Conservation Comm'n, 982 S.W.2d 650, 651
(Tex. App.--Austin 1998, pet. denied) (citing Sexton v. Mount Olivet Cemetery Ass'n, 720
S.W.2d 129, 137 (Tex. App.--Austin 1986, writ ref'd n.r.e.)). It is undisputed that neither the
Commission nor the Board is expressly granted the power to protest an application by a private
landowner to receive a zoning variance.

 Lack of express authority for a particular act of an agency does not mean that the
agency has no authority to act. See Texas Dep't of Human Servs. v. Christian Care Ctrs., Inc.,
826 S.W.2d 715, 719 (Tex. App.--Austin 1992, writ denied). An agency may have implied
authority to take an action even though such authority might not be expressly enumerated in its
enabling statute. Id. Agencies have the implied authority reasonably necessary to accomplish a
delegated purpose. Id.; see also Sexton, 720 S.W.2d at 137 ("[T]he Legislature generally intends
that an agency should have by implication such authority as may be necessary to carry out the
specific power delegated, in order that the statutory purpose may be achieved.") (emphasis in
original). We must discern the legislature's intent by looking to the statute as a whole and
construing any questioned part of the statute to give effect to the legislative purpose. See
McDaniel, 982 S.W.2d at 652 (citing Citizens Bank of Bryan v. First State Bank, 580 S.W.2d 344,
348 (Tex. 1979) ("The cardinal rule in statutory interpretation and construction is to seek out the
legislative intent from a general view of the enactment as a whole.")).

 The legislature has expressly granted to the Commission "charge and control of all
state buildings, grounds, and property," and authorized the Commission to protect state property
from "damage, intrusion, or improper use." Tex. Gov't Code Ann. § 2165.001(a)(3) (West
1999).  The legislature has expressly authorized the Board to "preserve, maintain, and restore the
Capitol, the General Land Office Building, their contents, and their grounds." Id. § 443.007
(West 1998). Appellant contends that the duty of the Commission and the Board to protect and
preserve state buildings does not make it necessary for the agencies to protest a private property
owner's proposed zoning change. The City argues that because the agencies have implied
authority to do that which is necessary to accomplish a delegated purpose, both the Commission
and the Board were authorized to protest appellant's proposed variance.

 The Commission is the custodian of state property and holds title for the State to
property adjacent to the area covered by appellant's proposed zoning change. Id. § 2165.001. 
While there is no evidence in the record of precisely how the zoning change would impact the
Capitol or other state properties, an owner of property meeting the requirements of section
211.006(d) of the Code is not required to marshal evidence in support of its protest. After
reviewing the Commission's enabling statute, we conclude that the express authority given the
Commission to protect state property from damage, intrusion, or improper use necessarily includes
the implied authority to object to zoning changes that might adversely impact state property. 
Likewise, the Board, as the state agency entrusted with the preservation and maintenance of the
Capitol, has legal authority to protest zoning changes that may have a detrimental impact on views
of the Capitol. We overrule appellant's first point of error.

 Having determined that the Commission and the Board have the authority to protest
appellant's request for a zoning change, we now must decide whether the persons who signed the
protest letters had the authority to do so. The Commission is composed of six members appointed
by the governor to set policy, and to employ and direct an executive director. See 1 Tex. Admin.
Code § 111.1(a) (1998). The executive director manages the day-to-day business of the
Commission, employs staff, and carries out other duties and responsibilities as assigned by law
or delegated by the Commission. Id. The executive director is assisted by three associate deputy
directors. See Tex. Gov't Code Ann. § 2152.104 (West 1999).

 Neither the Commission's enabling statute nor the administrative rules adopted
pursuant to the statute delegate the power to issue a protest letter to either the Commission or its
executive director. However, a resolution approved by the Commission at a March 28, 1995 open
meeting and in effect at all times relevant to this appeal grants to the executive director power to
perform all necessary acts pursuant to the statutorily defined responsibilities of the Commission. 
Moreover, the resolution authorizes the executive director to "delegate authority to Commission
staff to carry out any of the responsibilities and duties herein delegated to the executive director"
and declares that deputy directors may be assigned the duty of managing the affairs of the
Commission in the absence of its executive director.

 We hold that the executive director had the authority to issue a protest letter
pursuant to the Commission's responsibility to protect state property from damage. The executive
director testified that although he was absent when the protest letter was executed and delivered,
deputy director Mullen was empowered to sign the Commission's letter in his absence. We hold
that this was a proper delegation of authority; therefore, deputy director Mullen had the authority
to issue the letter protesting appellant's proposed zoning change.

 The Board consists of the governor, lieutenant governor, speaker of the house of
representatives, one senator appointed by the lieutenant governor, one representative appointed
by the speaker of the house of representatives, and one member appointed by the governor. See
Tex. Gov't Code Ann. § 443.003(a) (West 1998). The governor serves as chairman of the board,
and the lieutenant governor and the speaker of the house serve as co-vice chairpersons. See 13
Tex. Admin. Code § 111.2, .3 (1998). The executive committee of the Board consists of the
chairman and the co-vice chairpersons. Id. § 111.4. As the chief governing members of the
Board, Governor Bush, Lieutenant Governor Bullock, and Speaker Laney unquestionably
possessed the authority to sign a protest letter on behalf of the Board. We overrule appellant's
second point of error.


CONCLUSION


 Because the Commission and the Board properly submitted letters protesting
appellant's proposed zoning change, a three-fourths vote of the Council was required to enact the
zoning change. Because the variance received less than a three-fourths vote, the City's refusal to
enact the zoning change was proper. We affirm the judgment of the trial court.



 

 Jan P. Patterson, Justice

Before Chief Justice Aboussie, Justices Kidd and Patterson

Affirmed

Filed: May 6, 1999

Publish

1. Cambridge Tower Condominiums Council of Owners ("Cambridge") intervened at the trial
court. Cambridge owns land adjacent to the area covered by the proposed change. As the
interests of Cambridge, the City of Austin, and Elden Aldridge do not diverge in this case, we will
refer to the parties collectively as the City.
2. The Commission and the Board are state agencies. See Tex. Gov't Code Ann. §§ 443.001
(West 1998), 2152.001 (West 1999).


g the Commission's enabling statute, we conclude that the express authority given the
Commission to protect state property from damage, intrusion, or improper use necessarily includes
the implied authority to object to zoning changes that might adversely impact state property. 
Likewise, the Board, as the state agency entrusted with the preservation and maintenance of the
Capitol, has legal authority to protest zoning changes that may have a detrimental impact on views
of the Capitol. We overrule appellant's first point of error.

 Having determined that the Commission and the Board have the authority to protest
appellant's request for a zoning change, we now must decide whether the persons who signed the
protest letters had the authority to do so. The Commission is composed of six members appointed
by the governor to set policy, and to employ and direct an