Southwest General 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-93-670-CV





S. C. SAN ANTONIO, INC. DOING BUSINESS AS SOUTHWEST GENERAL


HOSPITAL, BY AND THROUGH SAFECO PROPERTIES, INC., 


ITS SUCCESSOR IN INTEREST,



 APPELLANT


vs.





TEXAS DEPARTMENT OF HUMAN SERVICES,



 APPELLEE



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT



NO. 92-12853, HONORABLE JERRY DELLANA, JUDGE PRESIDING



 




 Appellee Texas Department of Human Services (the "Department") formerly
administered the Texas Medical Assistance Program ("Medicaid"), which includes a
reimbursement program for Medicaid hospitals serving a disproportionate share of low-income
patients ("Dispro I program"). (1) Under the Dispro I program, Medicaid hospitals that serve the
most low-income patients receive a pro rata share of an allotted fund which is disbursed annually. 
In 1991 Southwest General Hospital in San Antonio applied for reimbursement under this
program. Based on the figures in its application, Southwest General was not selected to share in
the fund. After the Dispro I fund had been fully disbursed to the selected hospitals, Southwest
General discovered that it had not properly calculated its "total patient census days," a critical
number in the reimbursement formula. Had it properly calculated its total patient census days,
Southwest General estimates that it would have received approximately $850,000 of Dispro I
funds. 

 Southwest General sought a contested hearing to review the Department's allotment
of the Dispro I fund in 1991, alleging that the Department's failure to define "total patient census
days" harmed the hospital in the sum of $850,000. The Department granted the hospital an
administrative hearing in April 1992, at which time the administrative law judge upheld the
Department's denial of reimbursement to Southwest General. Southwest General then sought
judicial review of this decision and a declaratory judgment that the Department violated the
Administrative Procedure Act by relying on a definition that had not been published as a
Department rule. The trial court affirmed the agency decision and declined to grant the
declaratory relief. Southwest General brings this appeal, complaining of both actions.

 Because we find no statutory or constitutional basis for an appeal from this agency
decision, we will render judgment that the suit seeking judicial review be dismissed for lack of
subject-matter jurisdiction. We will also dismiss for want of subject-matter jurisdiction Southwest
General's suit for declaratory judgment.



 REIMBURSEMENT TO DISPROPORTIONATE SHARE HOSPITALS


 In 1991 Southwest General was a designated Medicaid hospital, eligible to receive
payment for providing services to Medicaid patients. All qualifying Medicaid hospitals are
eligible to apply for additional reimbursement under the Dispro I program; the funds from this
program are awarded to the twenty-five percent of hospitals that provide the most services to low-income patients. The competitive Dispro I program is administered by the Department under
rules governing "Additional Reimbursement to Disproportionate Share Hospitals." 25 Tex.
Admin. Code § 29.609 (1994). (2) Neither party disputes that Southwest General qualified to
compete for a portion of the Dispro I fund in 1991. 

 The formula for determining a qualifying hospital's disproportionate share
percentage in 1991 was as follows: 



Title XVIII days + Title XIX days + Additional Indigent Days × 100 

Total Patient Census Days (3) 




11 Tex. Reg. 4676 (1986) (former 40 Tex. Admin. Code § 29.609(d)(1)). After calculating this
percentage, the Department arrays each hospital's disproportionate share percentage in descending
order and selects the twenty-five percent (25%) of hospitals that provide the most services to low-income patients. 25 Tex. Admin. Code § 29.609(e)(3) (1994). The Dispro I fund for that year
is then allocated pro rata among the selected hospitals. (4) Hospitals that fail to rank among the top
twenty-five percent do not receive any reimbursement from the Dispro I fund. 

 Under the formula set forth above, the smaller the denominator, "total patient
census days," the higher the hospital's disproportionate share percentage will be. Southwest
General's calculation of its total patient census days was inflated, producing a smaller
disproportionate share percentage than it actually earned; this lower percentage knocked Southwest
General out of the top twenty-five percent of competing hospitals. (5) On July 19, 1991, the
Department informed Southwest General that it would receive no disproportionate share
reimbursement for 1991. At that time the Department disbursed 85% of the Dispro I fund to
qualifying hospitals; however, it retained 15% of the fund for thirty days to allow hospitals
dissatisfied with their ranking or their percentage to request adjustments. Having anticipated a
large reimbursement, Southwest General contacted the Department repeatedly within this thirty-day period to question its failure to receive reimbursement. However, the hospital did not
discover the miscalculation that led to its ineligibility until after the remaining 15% of the Dispro
I fund for 1991 was finally disbursed on August 19, 1991. Complaining that but for this
miscalculation it would have been entitled to $850,000 in reimbursement from the Dispro I fund,
Southwest General asked the Department to "recall" sufficient funds already distributed to other
hospitals to allow full reimbursement of $850,000 to Southwest General. When the Department
refused because the hospital's claim came too late, Southwest General sought an administrative
hearing. The administrative law judge found that the hospital was entitled to a hearing but upheld
the agency's decision. Southwest General then sought judicial review and a declaratory judgment
challenging the rules governing Dispro I; the trial court also affirmed the agency's decision.



JURISDICTION


 The Department argues that no statute confers a right of judicial review of this
agency action, nor has the action adversely affected any vested property right of the hospital. 
Although the Department did not object to the trial court's lack of subject-matter jurisdiction, this
jurisdictional challenge may be raised for the first time on appeal. Tullos v. Eaton Corp., 695
S.W.2d 568 (Tex. 1985). Subject-matter jurisdiction is essential to our authority to decide a case. 
Texas Ass'n of Business v. Texas Air Control Bd., 852 S.W.2d 440, 443 (Tex. 1993). Southwest
General responds that the Texas Human Resources Code provides for this right of appeal in
section 32.034(a), which grants the Department authority to adjudicate claims in contested cases
in accordance with the Administrative Procedure Act, Tex. Gov't Code Ann. §§ 2001.001-.902
("APA"). See Tex. Hum. Res. Code Ann. § 32.034(a) (West Supp. 1995). Additionally, it
argues that section 32.0281 provides for the right to appeal actions involving rules that relate to
the determination of payment rates to Medicaid hospitals. See id. § 32.0281 (West 1990). It also
asserts that APA section 2001.171 confers a right of appeal in this case. See Tex. Gov't Code
Ann. § 2001.171 (West 1995). Finally, Southwest General contends that even without statutory
authority a right of judicial review is necessarily implied because the Department violated the
hospital's constitutional rights by taking a vested property right. We must resolve this question
of jurisdiction before addressing appellant's points of error.

 The doctrine of governmental immunity insulates agency action from judicial
review unless a statute provides for such review, the action violates constitutional procedural due
process, or the constitution waives the state's immunity from suit. Southwest Airlines v. Texas
High-Speed Rail Auth., 867 S.W.2d 154, 157 (Tex. App.--Austin 1993, writ denied). In
Motorola, Inc. v. Bullock, 586 S.W.2d 706 (Tex. Civ. App.--Austin 1979, no writ), we held that
the predecessor of APA section 2001.171, section 19 of the Administrative Procedure and Texas
Register Act, did not create a right of judicial review by generally waiving the state's immunity
from suit, but only set out the procedure for judicial review if suit is authorized pursuant to
another statutory provision. Id. at 708. Consequently, section 2001.171 provides no basis for
judicial review of Southwest General's claim. Southwest Airlines, 867 S.W.2d at 158.

 Southwest General further relies on two sections in chapter 32 of the Texas Human
Resources Code, the chapter that governs this state's Medicaid Program. First, appellant points
to section 32.034(a):



The department has authority to adjudicate claims of contested cases in accordance
with the [Administrative Procedure Act]. When the department intends to cancel
its contract or impose monetary penalties under a contract with a person providing
medical assistance, the department shall give reasonable notice and an opportunity
for hearing if one is requested. The department shall adopt rules consistent with
the [APA] to implement this section, and hearings under this section are contested
cases under that act.

Tex. Hum. Res. Code Ann. § 32.034(a) (West Supp. 1995) (emphasis added). This dispute does
not involve the cancellation of Southwest General's Medicaid contract or monetary penalties under
that contract. We therefore find no basis for judicial review in section 32.034(a).

 Next Southwest General cites us to section 32.0281(e) of the Human Resources
Code, which governs "Rules and Notice Relating to Payment Rates" for medical assistance: "An
interested party may appeal an action taken by the department under this section, and an appeal
of such action shall be governed by the procedures for a contested case hearing under the
[Administrative Procedure Act]. . . ." Tex. Hum. Res. Code Ann. § 32.0281(e) (West 1990). 
However, Southwest General is not an interested party in a dispute concerning payment rates for
services provided under the Medicaid program. Rather, this dispute concerns "Additional
Reimbursement to Disproportionate Share Hospitals," a voluntary and competitive program that
makes no provision for a contested case hearing or other appeal of disputes regarding the
distribution of Dispro I funds. The administrative law judge erroneously relied on department
rules governing contested hearings of payment rates to find that Southwest General was entitled
to a hearing when it failed to qualify to receive Dispro I funds. We conclude that because this
dispute is not about payment rates, appellant may not rely on section 32.0281(e) to bring this
appeal. 

 Although the version of the department rule in effect at the time of this dispute
simply failed to provide for any appeal of a hospital's qualification or disqualification for Dispro
I funds, that rule has been amended to specifically negate a hospital's right to an adversary
hearing. (6) We note that in lieu of a contested hearing, the Department retained 15% of the Dispro
I fund for a thirty-day period to allow for "adjustments" before all the annual funds were finally
disbursed. (7) During this limited time period, any hospital could ask that its eligibility or the
amount of its reimbursement be corrected before the balance of funds was distributed. This
adjustment period was available to Southwest General, and the record reflects that sufficient funds
were retained to reimburse the hospital in full had its calculation error been timely discovered. 
Reviewing the department rule and the time-sensitive nature of the reimbursement at issue, we
conclude that the rule governing additional reimbursement for disproportionate share hospitals
purposefully did not provide for a contested hearing with rights of appeal pursuant to the
Administrative Procedure Act. Appellant cannot bootstrap such a right of appeal from other
sections of the Human Resources Code governing payment rates for medical assistance. The
administrative law judge erred in finding any statutory basis for granting appellant a hearing. Southwest General maintains that it is nevertheless entitled to judicial review
because the Department's action deprived the hospital of a vested property right. See Texas State
Dep't of Human Resources v. Silver Threads Co., 569 S.W.2d 49, 51 (Tex. Civ. App.--Austin
1978, writ ref'd n.r.e). We begin by noting that even if a right to judicial review is inherent when
an administrative action adversely affects a vested property right, judicial review of the
administrative decision is not necessarily required by due process protection. See id.; Blair v.
Texas Dep't of Human Servs., 837 S.W.2d 670, 671 (Tex. App.--Austin 1992, writ denied). 
Rather, after determining that a protected interest is involved, the reviewing court focuses on
whether due process was afforded by the administrative procedures. Blair, 837 S.W.2d at 672. 
However, we must first determine whether Southwest General had a vested property right entitling
it to any judicial review at all.

 Southwest General cites the Court to its recent decision in Texas Department of
Human Services v. Christian Care Centers, Inc., 826 S.W.2d 715 (Tex. App.--Austin 1992, writ
denied), in which we held that the Department could not permanently withhold payment for
services that had actually been rendered to qualified Medicaid patients. Id. at 720. The
distinction in this case is that Southwest General had already been reimbursed for the medical
services directly provided to patients. By merely providing services, Southwest General did not
have a vested right to additional reimbursement; rather, it had to qualify and then rank in the top
twenty-five percent of competing hospitals to receive Dispro I funds in any given year. As we
have noted, Dispro I funds do not constitute payment for medical services rendered; they offer
"additional reimbursement" based solely on the volume of services provided to indigent
patients--those qualifying for Medicaid or Medicare and others. See 25 Tex. Admin. Code §§
29.609 (b)(1), (4), (10) (1994). In short, Southwest General had no more than an expectancy of
receiving additional reimbursement; any rights it had to Dispro I funds were contingent on a
comparison of Southwest General's level of services to indigent patients with that of other
hospitals. Its own failure to follow the rules in calculating the level of services it provided
disqualified it from receiving additional reimbursement in 1991. We hold that the agency's action
in promulgating and following the rules governing the Dispro I program did not deprive
Southwest General of any vested property right.

 Finding no statutory basis for judicial review and no deprivation of a vested
property right, we determine that there is no subject-matter jurisdiction for Southwest General's
suit for judicial review.

 Repeating one of the arguments from its suit for judicial review, Southwest General
also sought a separate declaratory judgment that the Department violated the rulemaking
provisions of the Administrative Procedure Act by failing to promulgate a rule defining "total
inpatient census days." Southwest General argues that this rulemaking violation caused it to lose
its share of the Dispro I fund in 1991. The trial court declined to grant the requested relief. (8) We have previously addressed an argument and fact situation parallel to Southwest
General's in Southwest Airlines Co. v. Texas High-Speed Rail Authority, 863 S.W.2d 123 (Tex.
App.--Austin 1993, writ denied). In that case, the trial court dismissed for want of subject-matter
jurisdiction a petitioner's suit for declaratory judgment after dismissing for the same reason the
petitioner's related cause of action for judicial review of an agency action. We affirmed the trial
court's judgment and held that an action for declaratory judgment could not be used as a vehicle
to try issues piecemeal in an attempt to obtain a different judgment in a concurrent judicial
proceeding involving the same controversy. Id. at 125-26. As the language of its request for
declaratory judgment reveals, Southwest General asked for declaratory relief merely to raise again
its argument that the Department's omission rather than Southwest General's own precluded it
from sharing in the 1991 Dispro I fund. As in Southwest Airlines, the object of Southwest
General's suit for declaratory judgment was to control the Department's final order by attacking
the validity of agency rules; this is precisely the "attempt to obtain a different judgment in the
same controversy" that we held to be an improper use of declaratory relief in Southwest Airlines. 
See id. at 126. Because we have concluded that the Department's decision regarding disbursement
of the 1991 Dispro I fund is not subject to judicial review for want of subject-matter jurisdiction,
we also hold that Southwest General may not circumvent this lack of jurisdiction by cloaking part
of its complaint in the mantle of a suit for declaratory judgment. Accordingly, the trial court was
without subject-matter jurisdiction to grant Southwest General the declaratory relief it sought. 
Because the trial court was without subject-matter jurisdiction to hear Southwest General's cause,
we do not address its points of error. 



CONCLUSION


 Because we have determined that the trial court was without subject-matter
jurisdiction to hear Southwest General's suit for judicial review or to grant the declaratory relief
it requested, we reverse the judgment of the trial court and render judgment that the cause be
dismissed for want of subject-matter jurisdiction.



 

 Bea Ann Smith, Justice

Before Justices Powers, Aboussie and B. A. Smith

Reversed and Rendered

Filed: January 11, 1995

Publish

1. [1]  The Texas Department of Health assumed primary responsibility for administering the
Medicaid and Dispro I programs in 1993. See Act of Aug. 8, 1991, 72d Leg., 1st C.S., ch.
15, § 1.07, 1991 Tex. Gen. Laws 296, 296-97, amended by Act of May 22, 1993, 73d Leg.,
R.S., ch. 747, § 1.07, 1993 Tex. Gen. Laws 2920, 2920-21; 18 Tex. Reg. 5978 (1993)
(transferring bulk of Texas Administrative Code sections governing Medicaid and Dispro I
programs from title 40 (Department of Human Services) to title 25 (Department of Health)). 
Because the sections pertinent to the instant dispute are now in title 25, we will cite to this title
for convenience; however, we will note all substantive changes between former and current
versions of the rules.
2.   Although the heading and section number remained the same, substantial changes were
made to section 29.609 shortly before it was transferred from title 40 to title 25. See 18 Tex.
Reg. 5091 (1993). Again, we will note specific changes where relevant.
3.   Title XVIII of the Social Security Act governs the Medicare program. See 42 U.S.C.A.
§§ 1395-1395ccc (West 1992 & Supp. 1994). Title XIX of the Social Security Act governs
the Medicaid program. See id. §§ 1396-1396v. Thus, Title XVIII Days refers to number of
Medicare patient days billed, while Title XIX Days refers to number of Medicaid patient days
billed. See 11 Tex. Reg. 4676 (1986) (former 40 Tex. Admin. Code §§ 29.609(b)(1), (2)). 
This formula has since been amended. See 18 Tex. Reg. 2938 (1993) (adopted at 18 Tex.
Reg. 5091 and codified at 25 Tex. Admin. Code 29.609(d)).
4.   The formula in effect for 1991 is set forth at former 40 Tex. Admin. Code § 29.609(e). 
11 Tex. Reg. 4676 (1986). The current formulas are set forth at 25 Tex. Admin. Code
§ 29.609(f) (1994).
5. Southwest General erroneously included "skilled nursing days" when calculating its "total
patient census days" on the disproportionate share application. It likewise included skilled
nursing days in reporting its total annual patient days in the Texas Department of Health's
Annual Survey of Hospitals. The Department used the number supplied on the
disproportionate share application as a check on the number of total patient census days it
received from the Texas Department of Health based on the annual survey. Southwest General
complains that the Department never published a rule instructing hospitals to exclude skilled
nursing days in either report; however, the instructions on the annual survey direct hospitals to
include or exclude skilled nursing days depending on the type of facility they operate. 
6.   Current 25 Tex. Admin. Code § 29.609(g), effective August 16, 1993, reads:


(g) Review of agency determination. The single state agency or its
designee notifies hospitals of their eligibility or ineligibility and the
estimated amount of payment before the beginning of the state fiscal
year. The actual amount of payment may vary if a successful review
request by one or more hospitals necessitates an adjustment in the
amount of payments to the other hospitals in the program. Hospitals that
do not qualify or that believe the amount of payment is incorrect may
request a review by the single state agency or its designee.

 (1) The hospital's written request for a review must be made to
the director of acute care services and must be received by the director
within 10 calendar days after the hospital receives notification of its
eligibility or ineligibility. The hospital's request must contain specific
documentation supporting its contention that factual or calculation errors
were made, which, if corrected, would result in the hospital qualifying
for payments or receiving payment in a corrected amount.

 (2) The review is:

 (A) limited to allegations of factual or calculation errors;

 (B) limited to a review of documentation submitted by the
hospital or used by the single state agency or its designee in making its original determination; and

 (C) not conducted as an adversary hearing.


(Emphasis added).
7.   This practice was not based on a formal rule in 1991, but there was testimony that the
Department followed this 85-15 percent disbursement procedure. Although Southwest General
complains that it was denied due process because the Department had not established a formal
appeals procedure, it does not challenge the fact or propriety of the Department's disbursement
practice. Moreover, Southwest General's federal due process challenge to the Department's
procedure must fail because Southwest General did not have a protected interest for which
process was due. As we have noted, "[C]urrent procedural due-process analysis protects only
what actually belongs to the individual, rather than recognizing that unfairness exists in the
very act of disposing of an individual's situation without allowing the individual to participate
in some meaningful way." Pickell v. Brooks, 846 S.W.2d 421, 426 (Tex. App.--Austin 1992,
writ denied). Because we conclude below that Southwest General did not have a vested
property interest in funds from the competitive Dispro I program for 1991, no notice, process,
or formal appeals procedure was due. See Pope v. City of Dallas, 636 S.W.2d 244, 246 (Tex.
App.--El Paso 1982, no writ). As we note, however, limited review procedures have now been
established by rule at 25 Tex. Admin. Code §§ 29.609(g), (h) (1994).
8.   Although the trial-court judgment does not expressly deny Southwest General's claim for
declaratory judgment, its judgment affirming the Department's final decision impliedly
disposes of this claim. See North E. Indep. Sch. Dist. v. Aldridge, 400 S.W.2d 893, 897-98
(Tex. 1966) (when judgment is not intrinsically interlocutory in character, it is presumed to
dispose of all claims and parties and render judgment final for appeal purposes).