

# NUMBER 13-17-00030-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

JAMES M. BASS, IN HIS OFFICIAL
CAPACITY AS THE EXECUTIVE
DIRECTOR OF THE TEXAS
DEPARTMENT OF TRANSPORTATION
AND THE TEXAS DEPARTMENT OF
TRANSPORTATION,                                              Appellants,

v.

WHALEN'S FURNITURE, INC.,                                     Appellee.

---

### On appeal from the 250th District Court
### of Travis County, Texas.

---

# OPINION[1]

---

[1] Pursuant to a docket-equalization order issued by the Supreme Court of Texas, this appeal was transferred to this Court from the Third Court of Appeals in Austin, Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through 2017 1st C.S.).

**Before Chief Justice Valdez, and Justices Longoria and Hinojosa**
**Opinion by Justice Hinojosa**

Appellants James M. Bass, in his Official Capacity as the Executive Director of the Texas Department of Transportation and the Texas Department of Transportation (collectively the Department) appeal from a district court judgment reversing an order issued by the Texas Transportation Commission (the Commission). In two issues, the Department contends that the trial court lacked subject-matter jurisdiction to consider appellee Whalen's Furniture, Inc.'s (Whalen) judicial appeal of the Commission's order and, even if the trial court possessed jurisdiction, it erred in reversing the Commission's order. We vacate the trial court's judgment and dismiss the Department's appeal for want of jurisdiction.

## I. BACKGROUND

Whalen is a furniture store. In 1966, it erected an outdoor advertising sign (a billboard) along State Highway 83 near Harlingen, Texas. In December 1972, the Department issued a billboard permit to Whalen. At some point, Whalen's billboard permit lapsed, but the Department offered an amnesty program for such permits. In November 2012, Whalen applied for amnesty, paid outstanding permit renewal fees, and the Department issued it a renewal permit. Thereafter, Whalen's billboard permit was effective through October 2013.

### A.    2013 Inspection, Permit Renewal, and Permit Cancellation

On July 8, 2013, E.J. Deleon, an inspector with the Department, inspected Whalen's billboard. In Deleon's field inspection log (inspection report or FIL), he observed that the billboard had been removed. Deleon commented in his inspection

2

report the following:

> Inventory inspection on this structure for attachment of replacement plates. While on the inspection[,] I observed that sign has been removed. I called Mr. Tom Weekly[, Whalen's president,] and he mentioned that the sign was completely blown down by strong winds. He also mentioned that he wants to eventually put the sign back up. (A new sign). I documented photos, FIL and GPS coordinates.

Notwithstanding Deleon's inspection report, on August 13, 2013, the Department sent Whalen a permit renewal application for the billboard. The renewal application contains several preprinted provisions that provide, in relevant part, the following:

**ADVISEMENT**

. . .

3.  Permits are renewed pending the outcome of an administrative hearing. A "yes" in the column "Outstanding Violations" indicates that there is an action pending on the permit, such as the correction of a violation or an administrative hearing; an explanation is enclosed.

**DEPARTMENT REVIEW**

1.  Each permit checked "Approved" in Part III of the Permit Renewal Table has been renewed for one year beyond its listed expiration date and shall remain valid only if its corresponding sign was legally erected and continues to be legally maintained in accordance with all applicable law and regulation. Approval of the renewal is not an indication that the sign has been audited for total compliance with highway beautification laws. It is incumbent upon the permit holder to ensure that his or her signs are not violating any City, State, or Federal statutes.

On August 27, 2013, the Department sent Whalen, by certified mail, a "notice of cancellation" that provides the following:

> During an inspection of th[e] area [where the billboard is located] conducted [on] July 8, 2013, the inspector found that the sign has been removed. Your attention is drawn to the following reference to the Texas Administrative Code (TAC):

3

43 TAC § 21.176(a)(1) which states *Cancellation of Permit. The department will cancel a permit for a sign if the sign is removed . . .*

For this reason, the Department is notifying you that effective on the date of this letter, the aforementioned permit is hereby **cancelled**.

Pursuant to Title 43, TAC, § 21.176, you have the right to request an administrative hearing on the question of the cancellation of the aforementioned permit. The request must be made in writing to the Director of the Right of Way Division within 45 days of the receipt of this notice.

(Emphasis in original).

On September 4, 2013, Weekly, as president of Whalen, returned the permit renewal application and submitted the seventy-five-dollar fee to the Department.

On September 13, 2013, Whalen requested an administrative hearing as instructed in the notice of cancellation. Also on that date, the Department received Whalen's permit renewal application and the accompanying fee.

The Department renewed Whalen's billboard permit on September 17, 2013 without acknowledging Deleon's July 8, 2013 inspection report, the August 27, 2013 notice of cancellation, or that Whalen was within the forty-five-day period for requesting an administrative hearing as afforded by the notice of cancellation.[2]  The second page

---

[2] At the administrative hearing, Wendy Knox, the Outdoor Advertising Regulatory Program Supervisor for the Department, answered the administrative law judge's questions:

Judge: . . . And the point was made in the cross-examination that the Notice of Cancellation was issued on August 27, 2013, and it indicates that effective the date of that letter, the permit is canceled. And so my only question is: Why would a permit renewal application be sent to a permit holder whose permit was canceled?

Knox: Two things. In one, the notice was—if you look in the upper right-hand corner, the notice was actually generated on August 13, that was prior to our Notice of Cancellation.

Judge: Oh, it is. Okay. Gotcha.

4

of the renewal application states the following:

**PERMIT RENEWAL TABLE**

| Part I Permit Information | | | | | | | | Part II Completed By Applicant | | Part III For TXDOT USE | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Permit Number | Issued | County | Highway | Record ID | Outstanding Violations | Expires | Sign Size (Sq. Ft.) | Renew Permit | | Approved | Pending | Denied |
| 44760 | 12/03/1981 | Cameron | US 83 | 18838 | NONE | 10/16/2013 | 384 | **Yes** | No | √ | | |

Also on September 17, 2013, Deleon inspected Whalen's billboard site. Deleon commented in his report the following: "The sign has been rebuilt 100%. 9-17-2013 follow up inspection. The sign has [sic] been entirely been removed on prior inspection done on 07-08-2013. I have document photos, GPS, and FIL."

## B. Administrative and Judicial Proceedings

Both Whalen and the Department presented evidence to an administrative law judge (ALJ). On June 9, 2015, the ALJ issued a proposal for decision that recommended upholding the Department's cancellation of Whalen's billboard permit. On February 25, 2016, the Commission signed an order that adopted the factual findings and legal conclusions contained in the ALJ's proposal for decision.

Whalen sought judicial review in a Travis County district court under the Texas Administrative Procedure Act. *See* TEX. GOV'T CODE ANN. § 2001.171 (West, Westlaw

---

Knox: And secondly, as [counsel for Whalen] was asking me earlier, based on the form in our regulation time, we still issue renewals pending the outcome of a hearing. I was instructed otherwise later.

. . .

Knox: . . . in our regulations when a permit is canceled, the licensee requests a SOAH hearing and then it abates all action on that permit. So the cancellation is not finalized until the litigation finalizes.

As detailed below, one of the Commission's findings of fact erroneously states, "On September 17, 2013, pending the outcome of the administrative hearing on the cancellation, the Permit was renewed by [the Department.]".

through 1st C.S. 2017) ("A person who has exhausted all administrative remedies available within a state agency and who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter."). After receiving briefing from both parties and admitting the administrative record, the trial court signed a final judgment reversing the Commission's order. This appeal by the Department followed.

## II. JURISDICTION

In the Department's first issue, it contends that the trial court lacked subject-matter jurisdiction to consider Whalen's appeal of the Commission's order. Although the Department challenges the trial court's subject-matter jurisdiction for the first time on appeal, we may consider such a challenge. *See S.C. San Antonio, Inc. v. Tex. Dep't of Human Serv.*, 891 S.W.2d 773, 776 (Tex. App.—Austin 1995, writ denied) ("Although the Department did not object to the trial court's lack of subject-matter jurisdiction, this jurisdictional challenge may be raised for the first time on appeal."). Whether a court has subject-matter jurisdiction is a question of law that we review de novo. *Tex. Parks & Wildlife Dep't v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

We, too, are concerned about jurisdiction in this case but in terms of mootness. Specifically, we are concerned with whether the dispute presented to the ALJ constituted a justiciable controversy given that the Department renewed Whalen's billboard permit twenty-one days after it had initially cancelled it. The timing of a permit cancellation and subsequent renewal in this case is similar to that in *OAD Outdoor Advertising Display, Inc. See* TEX. TRANSP. COMM'N, *OAD Outdoor Advertising Display, Inc. v. Tex. Dep't of Transp.*, SOAH Docket No. 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 (Feb. 25, 2016) (final order), which the

6

Commission decided on the same date that it decided the underlying order in the instant appeal.

The findings of fact by the Commission in *OAD Outdoor Advertising* provide the following:

. . .

3. On January 17, 2006, [the Department] approved the permit applications for the two signs with the relocated poles. OAD then constructed the signs, allegedly with the revised pole placements.

4. [The Department] renewed the annual sign permits in 2007.

5. On or about March 2008, OAD requested that the one-year permits be renewed.

6. [The Department] did not renew the permits; instead it canceled the permits because it believed the signs were not built in the location described on the permit application.

7. On April 1, 2008, OAD requested an administrative hearing on the canceled permits.

[The administrative hearing was postponed or continued several times for various reasons.]

13. On or about November 8, 2012, [the Department] contacted OAD by telephone, and later that month by email, and invited OAD to renew many canceled permits, including the two sign permits at issue in this case, under an "amnesty program." OAD paid for the annual fees owed for the two permits from 2008 through 2014 without paying a late fee.

14. The permit renewal application [the Department] sent to OAD on or about November 2012 stated in relevant part:

. . . Any permit not renewed will automatically terminate and its corresponding sign must be removed by the owner immediately. . . .

1. Sign permits may be subject to cancellation and signs ordered to be removed upon detection of any violation of governing laws and regulations.

3. Permits are renewed pending the outcome of an administrative hearing. A "Yes" in the column "Outstanding Violations" indicates there is an action on the permit, such as the correction of a violation, or an administrative hearing; an explanation is enclosed.

1. [sic] Each permit checked "Approved" in Part III of the Permit Renewal Table has been renewed for one year beyond its listed expiration date and shall remain valid only if its corresponding sign was legally erected and continues to be legally maintained in accordance with all applicable laws and regulations.

15. Under the "Outstanding Violations" column on the Permit Renewal Table, [the Department] had indicated "none." [The Department] did not attach an explanation with the renewal of the permits.

16. A [Department] employee had calculated the unpaid annual fees owed for both sign permits for the period 2008 to 2014.

17. OAD President Phyllis O'Keefe signed the application on behalf of OAD, circled "Yes" under the column "Renew permit?," and submitted the completed applications with a check in the amount of $690 to satisfy the fees for 2008 through 2014 for both sign permits.

18. [The Department] accepted the payment and renewed the permits on December 18, 2012, with the "Approved" box checked for both permits. The renewal stated that the permits had expired on February 18, 2008, and were renewed until February 18, 2014.

19. On or about November 27, 2013, OAD received from [the Department] another annual permit renewal application for the two sign permits. Under the "Outstanding Violations" column on the Permit Renewal Table, [the Department] had indicated "none." [The Department] did not attach an explanation with the renewal of the permits. Ms. O'Keefe signed the application on behalf of OAD, circled "Yes" under the column "Renew permit?," and submitted the completed application with a check to satisfy the fees for the following year.

In its legal conclusions, the Commission concluded the following:

. . .

8.     Courts do not decide cases in which no controversy exists between the parties. Generally, a case is determined to be moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome. *Camarena v. Tex. Employment Comm'n*, 754 S.W.2d 149, 151 (Tex. 1988).

9.     The "capable of repetition yet evading review" exception to the mootness doctrine has only been used to challenge unconstitutional acts performed by the government. The exception was not created to preserve the right to appeal on behalf of the government when the complaining party abandons its claim for relief. *General Land Office v. OXY U.S.A., Inc.*, 789 S.W.2d 569, 571 (Tex. 1990).

10.     There are no Texas cases in which the collateral consequences exception to the mootness doctrine has been applied on behalf of the government, or on behalf of a known person who has not chosen to bring suit. Even if the "collateral consequences" exception could be applied in such a manner, the fact that an important question of administrative law is involved, the resolution of which would aid the agency, is not sufficient impetus for a court to render an advisory opinion. *General Land Office*, 789 S.W.2d at 572.

11.     [The Department's] renewal of the permits in 2012 and 2014 for the period 2008 through February 2015 has rendered moot OAD's appeal of [the Department's] 2008 cancelation of the permits. *General Land Office*, 789 S.W.2d at 572.

12.     This case should be dismissed as moot. Tex. Admin. Code § 155.503(b)(1)(C); *General Land Office*, 789 S.W.2d at 572.

Although agencies are not bound to follow their decisions in contested cases in the same way that courts must follow controlling precedent, an agency must explain its reasoning when it departs from prior norms. *Oncor Delivery Co. LLC v. Public Utility Comm'n of Tex.*, 406 S.W.3d 253, 267 (Tex. App.—Austin 2013, no pet.); *see also Flores v. Employees Ret. Sys.*, 74 S.W.3d 532, 544–45 (Tex. App.—Austin 2002, pet. denied)

9

(citing *Miner v. Fed. Commc'ns Comm'n*, 663 F.2d 152, 157 (D.C.Cir. 1980)). In particular, both state and federal courts require that an agency explain its reasoning when it appears to have departed from its earlier administrative policy or to be inconsistent in its determinations. *See, e.g., Flores*, 74 S.W.3d 544–45; *City of El Paso v. El Paso Elec. Co.*, 851 S.W.2d 896, 900 (Tex. App.—Austin 1993, writ denied); *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 291 (1st Cir. 1995); *Miner*, 663 F.2d at 157; *Nat'l Conservative Political Comm. v. Fed. Election Comm'n*, 626 F.2d 953, 959 (D.C.Cir. 1980).

The instant case and that of *OAD Outdoor Advertising* are indistinguishable. In both cases the Department renewed a billboard permit, it later cancelled the permit, and it renewed the permit after cancellation without excepting that renewal was pending resolution of the cancellation decision. The only factual difference is that the Department renewed a billboard permit that it had previously cancelled a second time in *OAD Outdoor Advertising* while the cancellation decision remained mired in the administrative proceeding. This factual difference does not change the proper disposition. We agree with the Commission in *OAD Outdoor Advertising* that the Department's renewal of a billboard permit that had been previously cancelled without excepting that renewal was pending resolution of the cancellation decision renders the administrative appeal of the Department's cancellation notice moot. By renewing Whalen's billboard permit on September 17, 2013 without excepting that renewal was pending resolution of the Department's August 27, 2013 cancellation notice, the Department eliminated the controversy between it and Whalen. If a case is or becomes moot, the court must vacate

10

any order or judgment previously issued and dismiss the case for want of jurisdiction.

*Heckman v. Williamson Cty.*, 369 S.W.3d 137, 150–51 (Tex. 2012).

### III. CONCLUSION

We vacate the trial court's judgment and the orders of the Commission and ALJ, and we dismiss the Department's appeal for want of jurisdiction.

LETICIA HINOJOSA
Justice

Delivered and filed the
15th day of November, 2018.