**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-19-00383-CV**
_____

**SHANNA GLAWSON D/B/A ACE BAIL BONDS, Appellant**

**V.**

**POLK COUNTY BAIL BOND BOARD, AMERICAN SURETY CO., AND
TONYA MCADAMS D/B/A ANYTIME BAIL BONDS, Appellees**

**On Appeal from the 258th District Court
Polk County, Texas
Trial Cause No. CIV33090**

**OPINION**

After finding the plaintiff's complaints over the Polk County Bail Bond
Board's decision to issue a license to another person who wanted to compete for bail
bond business in Polk County, the trial court determined the plaintiff did not have
standing to be heard on her complaints and dismissed the suit that the plaintiff,
Shanna Glawson, filed against the Board, American Surety Company, and Tonya

1

McAdams, the person the Board decided qualified for a license.[1] American Surety is the corporate surety that underwrites the bonds the Board licensed McAdams to write in Polk County.

Glawson appealed from the trial court's ruling dismissing her suit. On appeal, she complains the trial court erred when it granted the motions to dismiss filed by the Board, McAdams, and American Surety Company that resulted in the dismissal of her suit. She claims she had standing to challenge the Board's decision to issue a license to McAdams. On appeal, Glawson filed a brief and raises two issues for our review. First, she argues the trial court had jurisdiction over the claims she filed challenging the Board's decision to license McAdams. Second, she contends the trial court erred in concluding it lacked jurisdiction over the claims that she filed against McAdams and American Surety.

Resolving Glawson's issues requires that we answer two unrelated questions. First, under Texas law, do courts have jurisdiction over disputes involving a bail bond board's administrative rulings when the purpose of the plaintiff's suit is to challenge the Board's decision to license someone other than the plaintiff who filed the suit? Second, Glawson argues the Board violated the Texas Open Meetings Act (TOMA) in handling some of the meetings it held after she sued. To decide whether

---

[1]*See* Tex. Occ. Code Ann. §§ 1704.001-.306 (West 2012 & Supp. 2020) (the Act or the Bail Bond Act).

the trial court erred in dismissing the claims Glawson filed that rely on TOMA, we must decide whether Glawson's pleadings, if true, allege facts sufficient to show that the Board violated TOMA.[2]

We conclude the answers to these questions are no. We affirm the final judgment dismissing Glawson's suit, which was assigned trial court cause number CIV33090.

Background

After conducting two administrative hearings, the Board approved McAdams' application and licensed McAdams to write bail bonds in Polk County.[3] After the Board gave McAdams a license, Glawson filed a lawsuit and named the Board, American Surety, and McAdams as defendants in her suit. In the suit, Glawson challenged the decision the Board made to license McAdams and claimed that McAdams did not have the work experience needed to qualify her for a license. Glawson asked the trial court to enjoin the defendants and to prevent McAdams from writing surety bonds in Polk County.

As is relevant here, Texas law makes it unlawful for someone to write surety bonds in Texas "unless the person holds a license issued under this chapter."[4] In

---

[2]Tex. Gov't Code Ann. §§ 551.001-.146 (West & Supp. 2020) (Texas Open Meetings Act or TOMA).
[3]McAdams does business as Anytime Bail Bonds.
[4]Tex. Occ. Code Ann. § 1704.151 (License Required).

3

those counties that have elected to create bail bond boards, the Occupation Code gives such boards the authority to conduct hearings and decide whether an applicant is qualified to write bail bonds in the county or counties regulated by the board that issued the license.[5] Polk County is one of the counties in Texas that has opted to have a bail bond board. Under the Act, where such boards exist, the Occupational Code authorizes the board to "conduct hearings and investigations and make determinations relating to the issuance, denial, or renewal of licenses[.]"[6] Applicants seeking a license to write surety bonds must demonstrate they possess the qualifications spelled out in the Occupational Code for getting a license.[7]

After the Board licensed McAdams, Glawson filed the suit at issue in this appeal. In the suit, Glawson alleged that McAdams did not qualify for a license and the Board erred when it found that she did. Specifically, Glawson alleged McAdams did not have two years of work experience in all phases of the bail bond business, which is listed as one of the criteria an applicant must meet to qualify for a license to issue surety bonds.[8]

But while Glawson alleged that McAdams did not have the required work experience to qualify for a license, she then failed to provide the trial court with all

---

[5]*See id*. § 1704.052 (Discretionary Creation of Board).
[6]*Id*. § 1704.101(5).
[7]*Id*. § 1704.152(a).
[8]*Id*. § 1704.152(a)(4).

the information the Board considered in the administrative process when the Board licensed McAdams. Instead, Glawson provided the trial court with evidence not seen or considered by the Board. For example, Glawson filed an affidavit signed by Anthony Kroon to support her claims. In his affidavit, Kroon states that he is in the bail bond business and McAdams previously worked for him for about a year. But when she worked for him, Kroon continued, she did not acquire the work experience that is required to fulfil the licensing requirements under the Occupational Code that are needed to obtain a surety bond license. Kroon also stated while working for him, McAdams had not worked in all phases of the bail bond business even though she worked "at least 30 hours a week."[9] Kroon concludes that McAdams's experience, while working for him, did not meet the work-experience requirements necessary to be licensed.

Relying on Kroon's affidavit and the allegations in her pleadings, Glawson argued the Declaratory Judgment Act (DJA) gave the trial court the authority to enjoin the defendants to prevent McAdams from using her license. Glawson also asked the trial court to enjoin McAdams from writing bonds.[10]

---

[9]Kroon signed his affidavit the same day McAdams filed suit. Thus, Kroon's affidavit could not have been one of the exhibits the Board considered during the administrative hearings that resulted in the decision the Board made to license McAdams.

[10]*See* Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-.011 (Declaratory Judgment Act or DJA).

After answering, the defendants moved to dismiss the suit. In their respective motions to dismiss, the defendants argued the trial court lacked jurisdiction over lawsuits challenging the Board's licensing decision when the plaintiff who filed the suit was someone other than the person seeking to be licensed.[11] According to the defendants, the DJA does not give trial courts the right to exercise jurisdiction over a suit filed by a stranger to the license the Board issued.

After Glawson filed suit, the Board conducted another meeting. Glawson added a claim after the Board held this meeting and claimed that the Board, in the post-suit meeting, violated the rules that apply to governmental bodies, rules that generally require the meetings to be open to the public. The record shows that the Board conducted an emergency meeting shortly after Glawson filed the suit on less than 72 hours' notice to the public. As posted, the purpose of the meeting was to allow the Board to discuss litigation. The public notice the Board posted states the Board planned to meet in executive session to discuss litigation involving or contemplated by the Board. While the agenda for the meeting mentions litigation generally, nothing in the notice the Board posted contains anything specific to show the meeting concerned Glawson's recently filed suit.

---

[11]Tex. Occ. Code Ann. § 1704.255(a) (providing only the applicant for the license or the license holder whose license is denied, suspended, or revoked may appeal from an order of a board denying an application, renewal, suspension, or revocation of a bail bond license).

Days after the emergency meeting, the attorney representing the Board filed a plea to the jurisdiction in Glawson's lawsuit. The plea asserts the trial court did not have jurisdiction over the Board based on the claims that Glawson alleged in her suit. In the plea, Polk County adopted the arguments filed in an earlier pleading filed by American Surety and McAdams to dismiss Glawson's suit.[12] In addition to adopting the arguments of American Surety and McAdams, the Board also alleged it was immune from suit based on Glawson's allegations because the legislature had not waived the Board's immunity from suits like Glawson's, a suit filed by someone who is a stranger to the license that was issued by the Board.

In response to the defendant's motions, Glawson argued the license she had to write bail bonds in Polk County created a vested property interest that gave her the right to protect her license. That interest, Glawson claimed, gave the trial court jurisdiction to consider and to resolve the complaints she included in her petition complaining about the Board's decision to license McAdams.

Three days before the trial court conducted a hearing on the motions to dismiss, Glawson filed a supplemental petition. For the first time, Glawson added an additional claim asserting the Board violated TOMA based on the manner it conducted the post-suit emergency meeting. Glawson also claimed the Board, during

---

[12]Tex. R. Civ. P. 58 (allowing parties to adopt another party's pleadings by reference).

7

the emergency meeting, violated TOMA by discussing subjects that concerned matters that exceeded the matters listed on the agenda the Board posted before conducting the meeting. That said, Glawson never pleaded or filed any evidence to support her claim that the matters discussed in the emergency meeting included matters outside the scope of the agenda that was posted for the meeting. In her supplemental pleading, Glawson asked the trial court to order the Board "to reverse the action taken at this meeting," but she never alleged or proved what actions the Board took during the emergency meeting.

After conducting a hearing on the defendants' motions to dismiss, the trial court granted the motions. Later, this Court abated the appeal to allow the trial court to determine whether it wanted to sign a final, appealable judgment to finalize the orders it signed granting the motions to dismiss. Following the abatement of the appeal, the trial court signed a final judgment and dismissed the suit Glawson filed against the Polk County Bail Bond Board, American Surety, and Tonya McAdams. The final judgment includes language of finality, language sufficient to establish this Court's jurisdiction over the appeal.

On appeal, Glawson argues the trial court erred in dismissing her suit for lack of jurisdiction.

## Standard of Review

In Texas, courts cannot resolve disputes without the subject-matter jurisdiction they need to do so.[13] Glawson's primary argument is that the trial court erred in dismissing her suit. We review appeals complaining about a trial court's dismissal of a suit for lack of jurisdiction de novo.[14]

The defendants' motions to dismiss claim Glawson failed to allege sufficient facts to demonstrate the trial court has jurisdiction over her claims. On appeal, we decide whether facts alleged in the plaintiff's pleadings, together with the jurisdictional evidence the trial court considered in deciding the motions to dismiss, were sufficient to establish that the trial court could exercise jurisdiction over the plaintiff's claims.[15] When trial courts dismiss suits based on a defendant's claim the plaintiff's pleadings are insufficient, the pleadings are construed liberally and in favor of the pleader.[16] If the pleadings are insufficient because they fail to allege enough facts for the trial court to determine whether jurisdiction exists, but the problem can be cured by amendment, the trial court must allow the plaintiff the opportunity to amend the pleadings before dismissing the suit.[17] On the other hand,

---

[13]*The State Bar of Tex. v. Gomez*, 891 S.W.2d 243, 245 (Tex. 1994).

[14]*See Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 225-26, 228 (Tex. 2004); *Brown v. Todd,* 53 S.W.3d 297, 305 & n.3 (Tex. 2001); *Tex. Nat. Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 866-67 (Tex. 2001).

[15]*See Miranda*, 133 S.W.3d at 226-27.

[16]*Heckman v. Williamson Cty.*, 369 S.W.3d 137, 150 (Tex. 2012).

[17]*Miranda*, 133 S.W.3d at 226-27.

when the pleadings affirmatively negate the trial court's jurisdiction over the dispute, the trial court must grant the plea without allowing the plaintiff an opportunity to replead.[18]

Analysis

First, we address whether the trial court correctly decided it did not have subject-matter jurisdiction over the licensing decision made by the Board. For our purposes, the legislature gave bail bond boards in counties that opted to create them like Polk County, the right to decide what persons are eligible to be licensed.[19] Generally, Texas law provides parties with no "right to judicial review of an administrative order unless a statute provides a right or unless the order adversely affects a vested property right or otherwise violates a constitutional right."[20]

The Bail Bond Act contains no provisions that purport to allow someone like Glawson, a stranger to McAdams' license, the right to challenge the Board's licensing decision before a court. To avoid that problem, Glawson alleged that because she has a license, the vested property rights she has under her license give her standing to protect it by challenging the licenses of competitors like McAdams, whom she claims does not have the qualifications she needed to obtain a license.

---

[18]*Id.* at 227.
[19]Tex. Occ. Code Ann. § 1704.101 (Administrative Authority) (Supp. 2020).
[20]*Cont'l Cas. Ins. Co. v. Functional Restoration Assocs.*, 19 S.W.3d 393, 397 (Tex. 2000).

10

The Bail Bond Act creates an administrative process for applicants who are seeking a license. Even so, nothing in the Act allows someone like Glawson, a stranger to McAdams' license, to challenge licensing decisions of bail bond boards by filing an appeal of a board's decision to a court.[21] In legal terms, the Act omits a private cause of action for someone like Glawson, a stranger to the license at issue in the appeal.[22]

Our analysis does not end there, however, since Glawson also alleged that the property interest she has in her license is sufficient to give her standing to complain about a board's licensing decisions that concern other licensees. The trial court did not make any specific findings in the judgment that address that claim. Even so, we imply from the judgment dismissing the suit that the trial court found Glawson's property interest in her own license were insufficient to provide her with standing to challenge the Board's decision to license McAdams in a court.[23]

Of course, due process concerns arise if the facts in the pleadings show the State (or its agents) deprived a person of a vested interest in their property.[24] But the

---

[21]*See id*. at 397, 404; Tex. Occ. Code Ann. § 1704.255.

[22]*Id*.

[23]*See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002) (explaining that when no party requests findings of fact and conclusions of law, "all facts necessary to support the judgment and supported by the evidence are implied").

[24]*See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569-70 (1972) (recognizing procedural due process is implicated if the person has a protected interest giving the person "the right to some kind of prior hearing"); *see also* U.S.

11

Board's decision to license McAdams did not prevent Glawson from competing for any business regulated under her license because the suit challenges the Board's decision to license McAdams. Glawson also claimed that her rights to due process obligated the trial court to exercise jurisdiction over her claims and decide whether there was sufficient evidence before the Board to prove McAdams had the work-experience requirements to qualify for a license under the Act. But Glawson's pleadings contain no facts that support her due process claim. Instead, they show Glawson received the process she was due given that the pleadings before the trial court show the Board conducted two administrative licensing hearings before deciding to grant McAdams a license.[25] And we find nothing in Glawson's pleadings that allege the Board failed to give the public the required notice of the administrative proceedings it conducted before licensing McAdams, the meeting that occurred before the emergency meeting that is the subject of Glawson's TOMA claim.

---

CONST. amend. XIV, § 1 ("[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law[.]"); Tex. Const. art I, § 19 ("No citizen of this State shall be deprived of life, liberty, property, privileges or immunities . . . except by the due course of the law of the land.").

[25] *See* Tex. Occ. Code Ann. § 1704.102(b)(2) (giving bail bond boards the right to conduct hearings, administer oaths, examine witnesses, and compel the production of pertinent records); *S.C. San Antonio, Inc. v. Tex. Dep't of Human Servs.*, 891 S.W.2d 773, 778 (Tex. App.—Austin 1995, writ denied) (noting that "after determining that a protected interest is involved, the reviewing court focuses on whether due process was afforded in the administrative process").

The pleadings before the trial court reflect the Board investigated McAdams' qualifications and held hearings before deciding whether McAdams was eligible for a license.[26] Since Glawson is a stranger to McAdams' license, we conclude that Glawson failed to plead facts sufficient to show she did not receive the process she was due in the administrative licensing process involving McAdams' license.

In the end, Glawson's pleadings do no more than show that she disagrees with the administrative decision the Board made to grant McAdams a license. Yet Glawson's pleadings reflect the Board investigated McAdams' qualifications, holding two administrative hearings before deciding McAdams qualified for a bail bond license.[27] Thus, Glawson's pleadings affirmatively negate her due process claim since they show that Glawson had "an opportunity to be heard at a meaningful time and in a meaningful manner" about whether McAdams was qualified to be licensed.[28] While on this record we don't know whether Glawson objected to McAdams license in the administrative hearings process, Glawson failed to both allege and to provide the trial court with evidence to show the Board violated any open meetings act rules in the administrative hearings it conducted before it decided

---

[26]Tex. Occ. Code Ann. § 1704.157.

[27]*Id*. § 1704.102(b)(2) (allowing the board to administer oaths and examine witnesses); § 1704.158(a) (requiring bail bond boards to conduct hearings on licensing applications).

[28]*Univ. of Tex. Med. Sch. at Houston v. Than*, 901 S.W.2d 926, 930 (Tex. 1995).

13

to approve McAdams' application for a license. We conclude the trial court properly dismissed Glawson's claims that challenge the Board's decision to license McAdams.[29]

That leads us to the second question, whether Glawson's pleadings allege facts that, if true, are sufficient to demonstrate that a bona fide question of fact exists on Glawson's claim alleging the Board violated TOMA when it conducted the post-lawsuit emergency meeting? We conclude the answer is no.[30] The DJA does not create jurisdiction when jurisdiction does not already exist either based on a statute providing the plaintiff with a claim or under the constitution.[31] As to the emergency meeting, Glawson's petition alleges the Board failed to provide the public with 72 hours' notice of the emergency meeting. She also claimed the Board, when it conducted the emergency meeting, discussed matters that exceeded the scope of the agenda the Board posted prior to the meeting.

Generally, the Texas Open Meetings Act allows the public the right to access meetings conducted by governmental bodies to allow the public to learn what government officials are considering when they are deciding matters that affect the public.[32] Even so, exceptions exist in the Open Meetings Act to the general

---

[29]*See Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002); *Phillips*, 94 S.W.2d at 141.

[30]*See* Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a).

[31]*Chenault v. Phillips*, 914 S.W.2d 140, 141 (Tex. 1996).

[32]Tex. Gov't Code Ann. § 551.002.

requirement that favors public meetings. Meetings held to discuss litigation is one of these exceptions, since the Open Meetings Act allows governmental entities to close meetings to the public to consult and seek the advice of attorneys on "pending or contemplated litigation[.]"[33] The agenda that was posted for the September 11 meeting states the Board planned to consider pending litigation in the emergency meeting. No other subject is listed on the agenda about what was to be discussed. Specifically, the agenda the Board posted states: "Executive Session to discuss pending litigation with the Polk County Bail Bond Board."

Glawson alleged the Board met in an emergency meeting shortly after she filed suit. Thus, even if the Board did discuss Glawson's lawsuit in the meeting (and she did not even allege that it did) her suit was "pending" the day the meeting occurred. Glawson also alleged the Board discussed matters that went beyond the matters stated in the posted agenda. Even so, the pleadings Glawson filed never alleged any factual basis for that claim.

The topic in the agenda the Board posted for the meeting is broad. The Texas Supreme Court has also explained that under the Open Meetings Act, "it is not necessary to state all of the consequences which may flow from consideration of the

_____

[33]*Id*. § 551.001(2) (defining *closed meeting*), § 551.071(1)(A) (Consultation with Attorney; Closed Meeting).

topic."[34] We conclude Glawson's pleadings are conclusory and as such, fail to allege facts sufficient to support her Open Meetings Act claim as it relates to the emergency meeting.[35]

Last, Glawson complains the Board gave the public less than the required 72 hours' notice of its emergency meeting. But Glawson's own pleadings affirmatively demonstrate that allegation, even if true, is not a violation of TOMA. Under TOMA, governmental bodies may conduct emergency meetings on one hour's notice of the meeting.[36] Glawson never claimed, alleged, or argued the Board notified the public of the emergency meeting on less than one hour's notice.

## Conclusion

We hold the trial court did not err in granting the defendants' motions to dismiss. Glawson has never claimed that she could have cured the deficiencies the defendants pointed out in the motions to dismiss had she been allowed to amend her pleadings. While Glawson supplemented her pleadings by adding a TOMA claim that concerns the Board's emergency meeting, her pleadings show that claim, like her others, lacks merit. For these reasons, we conclude the trial court was not

---

[34]*Cox Enters., Inc. v. Bd. of Trs. of Austin Indep. Sch. Dist.,* 706 S.W.2d 956, 958-59 (Tex. 1986).

[35]*See City of Elsa v. Gonzalez*, 325 S.W.3d 622, 625 (Tex. 2010) (explaining that when pleading jurisdictional facts, the pleadings may not be conclusory and must include sufficient jurisdictional facts to allow the court to determine whether it has jurisdiction over the dispute).

[36]Tex. Gov't Code Ann. §§ 551.043, 551.045(a).

16

required to allow Glawson an opportunity to replead before ordering the suit dismissed.[37] In this Court, Glawson has not argued that she could cure her pleadings if allowed to amend or explain how the pleadings could be amended in some way that would demonstrate that she has a good faith basis for the claims the trial court dismissed.

For the reasons explained above, the trial court's judgment dismissing Glawson's suit is affirmed.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on March 24, 2021
Opinion Delivered January 13, 2022

Before Kreger, Horton and Johnson, JJ.

---

[37]*See Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839 (Tex. 2007).